UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MICHAEL DALCOROBBO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 07-cv-1106 |
| | ) |
| JOSEPH MATHY,[1] | ) |
| | ) |
| Respondent. | ) |

**O P I N I O N  &  O R D E R**

Before the Court is a Petition for the Writ of Habeas Corpus under 28 U.S.C. § 2254, filed on May 14, 2007 [Doc. 4].  Respondent answered the petition on July 13, 2007 [Doc. 7], and Petitioner filed a reply on September 6, 2007 [Doc. 9].  Petitioner also filed a supplemental reply on September 18, 2007 [Doc. 10].  For the reasons set out below, the petition is DENIED, and this case is TERMINATED.

**I.  BACKGROUND**

Petitioner, Michael J. Dalcorobbo, is currently incarcerated at the Pontiac Correctional Center in Pontiac, Illinois and is serving a sentence of natural life without the possibility of parole for a murder conviction.  On February 24, 2005, a prison official issued a disciplinary report that charged Petitioner with various offenses after Petitioner allegedly placed human feces in the pea salad served in a prison employee dining room at the Menard Correctional Center on February 9,

---

[1] The Court substitutes Joseph Mathy, the current warden of the Pontiac Correctional Center, for Eddie Jones, who the parties named as the Respondent in previous filings.

2005.[2] Petitioner worked in the dietary department of the employee dining room at the time of the incident. The disciplinary report charged Petitioner with the following offenses: (1) damage or misuse of property (IDOC Rule 202); (2) intimidation or threats (Rule 206); (3) insolence (Rule 304); and (4) a health, smoking or safety violation (Rule 402). An amended report was issued on March 14, 2005, charging Petitioner with: (1) a Rule 202 violation; (2) a Rule 402 violation; and (3) violating state or federal law (Rule 501), specifically 720 Ill. Comp. Stat. 5/12-4.5, tampering with food, drugs or cosmetics.

An adjustment committee (Committee) held a March 21, 2005 hearing on the charges against Petitioner. The Committee found Petitioner guilty of violating Rules 202, 402, and 501. In making that finding, the Committee relied on the two abovementioned disciplinary reports, which indicated that prison investigators had interviewed inmates who worked in the dietary department at the Menard facility. During the interviews, two of these inmates stated to prison investigators that they saw Petitioner in a restroom shortly before a lieutenant found feces in the pea salad. The inmates also indicated that Petitioner was at odds with inmate Mario Johnson, who was in charge of preparing food for the salad bar, and that Petitioner had made statements about trying to replace Johnson as the preparer of food. Each of the inmates, including Petitioner, claimed no knowledge of who had put feces in the pea salad. The disciplinary reports indicated that Illinois State Police gave each

---

[2] Petitioner was transferred to the Pontiac facility sometime after the February 9, 2005 incident.

2

inmate a polygraph examination, and Petitioner was the only inmate found to be deceptive in answering questions about the pea salad incident.

As a result of its guilty finding, the Committee punished Petitioner by (1) taking away one year of good conduct credit; (2) placing Petitioner in segregation; (3) demoting Petitioner to C-status; and (4) taking away Petitioner's audio/visual and commissary privileges. Petitioner challenged the Committee's finding of guilt and filed a grievance on March 23, 2005. A prison grievance officer affirmed the Committee's decision, and Petitioner appealed. Subsequently, in May 2005, an administrative review board held a hearing and recommended that the Director of the Department of Corrections (DOC) deny Petitioner's appeal. The board did, however, determine that only the Rule 501 conviction should stand because the other charges were lesser included offenses of the Rule 501 offense. The Director agreed with the board's recommendation. Thereafter, Petitioner filed a mandamus petition in Illinois state court challenging the proceedings that resulted in his conviction under Rule 501. The state trial court dismissed that petition in January 2006. Petitioner appealed, unsuccessfully, to the Illinois appellate court and the Illinois Supreme Court, raising various claims.

On January 24, 2007, Petitioner filed a complaint in federal district court seeking monetary damages under 42 U.S.C. § 1983 for the DOC's allegedly unconstitutional imposition of sanctions for Petitioner's Rule 501 violation. By an order of February 22, 2007, the district court ("section 1983 court") dismissed Petitioner's section 1983 claims pursuant to a doctrine established in Heck v.

3

<u>Humphrey</u>, 512 U.S. 477, 484-87 (1994).  The court held that Petitioner must challenge the fairness of the DOC's disciplinary procedures through a habeas corpus petition before bringing a section 1983 suit for damages.  Following the court's recommendation, Petitioner filed the instant habeas petition on May 14, 2007.

## II.  DISCUSSION

The core question in this case is whether a federal district court may consider the merits of a habeas petition under 28 U.S.C. § 2254 when the court's determination of the petitioner's claims will have no effect on the fact or duration of the petitioner's confinement.  The Court answers this question in the negative and holds that section 2254 does not allow consideration of the merits of Petitioner's claims under the facts of this case.  The determinative fact is that Petitioner, who is serving life imprisonment without the possibility of parole, never actually acquired or faced the prospect of losing any good conduct credit.  [Petition for the Writ at p. 7]; <u>see</u> 730 Ill. Comp. Stat. 5/3-6-3(a)(2.2) ("A prisoner serving a term of natural life imprisonment . . . shall receive no good conduct credit.").  This fact is crucial because it means that Petitioner has not faced and does not currently face the prospect of remaining in prison any longer than he would have if the adjustment committee had never imposed punishment upon him.  Any ruling this Court could make on Petitioner's claims would have absolutely no effect on the fact or duration of Petitioner's confinement.  As such, a section 2254 petition is not the proper vehicle through which to address Petitioner's claims.

A section 2254 habeas petition is the proper mechanism by which a prisoner may challenge, under federal and constitutional law, the fact or duration of his confinement.  Cochran v. Buss, 381 F.3d 637, 639 (7th Cir. 2004).  However, the petition is not the proper mechanism through which to challenge a mere condition of confinement.  Id.  Here, Petitioner seeks a ruling that the means used by the prison adjustment committee in finding him guilty of the accused Rule 501 offense were lacking in due process.[3]  Petitioner asks this Court to expunge the adjustment committee's finding that he is guilty of the offense.  But even if this Court would find that the prison's disciplinary methods violated due process under these facts, and even if the Court would agree to expunge the guilty finding, these rulings would not affect the fact or duration of Petitioner's confinement.  The Court reaches this determination based on the fact that Petitioner's sentence is a term of natural life without the possibility of parole.

It appears that the primary reason Petitioner filed the instant section 2254 petition was because the section 1983 court in Petitioner's January 2007 federal suit advised Petitioner to challenge the process that led to his Rule 501 conviction via a habeas petition.  The section 1983 court dismissed Petitioner's January 24, 2007 complaint, which requested money damages for the same disciplinary

---

[3] Petitioner also seems to raise various claims in his petition that challenge his Rule 501 conviction on grounds other than constitutional or federal law grounds ("non-federal claims").  A habeas petition under 28 U.S.C. § 2254 is properly filed by "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  Therefore, Petitioner's non-federal claims are not cognizable in this habeas proceeding.  And to the extent Petitioner's non-federal claims happen to touch on or overlap with federal due process requirements, those claims are addressed in this opinion.

5

sanctions at issue here. Delcorobbo v. Pitts, 2007 WL 605005 (C.D.Ill. Feb. 22, 2007). The section 1983 court based its holding on the Heck v. Humphrey line of cases. Delcorobbo at *2. The Supreme Court, in Heck, held that a state prisoner's section 1983 claim for damages based on a constitutionally invalid conviction or sentence does not accrue unless and until the prisoner shows that the conviction or sentence at issue has been officially invalidated. 512 U.S. at 486-87.

The Heck doctrine applies not only when a state prisoner seeks section 1983 damages for state action resulting in an allegedly illegitimate conviction but also when a state prisoner seeks damages for disciplinary sanctions imposed by state prison officials. Edwards v. Balisok, 520 U.S. 641, 643-44 (1997). In fact, section 1983 suits involving a state prisoner's loss of good conduct credit many times invoke the Heck doctrine. For example, a factual scenario may involve state prison officials disciplining a prisoner by reducing his status grade, placing him in disciplinary segregation, and revoking his good conduct credit. See, e.g., Clayton-El v. Fisher, 96 F.3d 236 (7th Cir. 1996). The prisoner may, in turn, seek money damages in a section 1983 suit for the suffering caused by the imposition of these disciplinary actions and claim that the administrative hearing that resulted in the punishments lacked due process. In these cases, the Heck principle serves to bar the section 1983 suit until the prisoner first challenges the loss of his good conduct credit in a habeas petition. Clayton-El, 96 F.3d at 42.

Section 1983 suits that involve a loss of good conduct credit are generally prohibited under Heck because a prisoner's loss of good conduct credit usually

means that the prisoner will spend a longer period of time in prison.  The <u>Heck</u> doctrine recognizes that the proper mechanism for challenging the duration of a state prisoner's confinement is a petition for habeas corpus.  The <u>Heck</u> doctrine further acknowledges that a section 1983 action, in cases involving good conduct credit, may operate so as to invade the domain of habeas corpus.  For example, in order to grant relief to the prisoner in the section 1983 suit illustrated above, the court would have to find the challenged disciplinary hearing invalid.  Further, a finding that the disciplinary hearing was invalid would be claim preclusive in any later habeas challenge to the loss of good conduct credit.  To avoid this conundrum, <u>Heck</u> forces a potential section 1983 prisoner-plaintiff to first challenge the loss of good conduct credit by means of a habeas petition.

   Therefore, in most cases, a district court would be correct to dismiss a state prisoner's section 1983 suit when that suit involves a prisoner's loss of good conduct credit.  And a loss of good conduct credit, in most instances, will be cognizable under a section 2254 habeas petition because a court's restoration of the credit will allow the prisoner to leave prison earlier.  <u>See, e.g.</u>, <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 478-82, 487 (1973); <u>Cochran</u>, 381 F.3d at 639 n.2.  But this case is different.  Here, Petitioner is serving a sentence of natural life without the possibility of parole.  Pursuant to Illinois law, a prisoner with this type of sentence is not eligible to receive good conduct credit.  730 Ill. Comp. Stat. 5/3-6-3(a)(2.2).  It is undisputed between the parties that Petitioner never received any good conduct credit.  Given that fact, it is confusing why state prison officials disciplined Petitioner by taking

7

away something that he never received in the first place and never would have received in the future. Regardless, that is what the parties allege to have happened. The important point, again, is that the disciplinary procedure that Petitioner challenges in the instant habeas petition did not result in any punishment that could potentially affect the duration of his confinement. Therefore, this Court respectfully disagrees with the section 1983 court's conclusion that the <u>Heck</u> doctrine applied so as to bar Petitioner's original section 1983 suit. The considerations that concerned the Supreme Court in <u>Heck</u> and <u>Edwards</u> do not seem to be at play under the facts of this case.

    Because Petitioner's request for relief is not cognizable in a section 2254 habeas petition, this Court denies the petition on that ground. It is worth noting, however, that were this Court to reach the merits of Petitioner's constitutional claims, the Court would likely find each claim to be without merit. The prison adjustment committee's determination seems to be supported by "some evidence" in the record. <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985). Petitioner should note that the same basic standard would apply to the claims in any future section 1983 action that he may bring.

## III.  CONCLUSION

IT IS THEREFORE ORDERED that the Petition for the Writ of Habeas Corpus under 28 U.S.C. § 2254 is DENIED.

CASE TERMINATED.

ENTERED this <u>30th</u> day of September, 2008

<u>s/ Joe B. McDade</u>
JOE BILLY MCDADE
United States District Judge
